## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LINWOOD ALLEN** | |
| **Plaintiff,** | |
| **v.** | **No. 1:20-cv-02453-TSC** |
| **DISTRICT OF COLUMBIA,** | |
| **Defendant.** | |

## DEFENDANT'S MOTION TO STAY THE CASE

Defendant District of Columbia (District) moves to stay the case.  A memorandum of points and authorities as well as a proposed order are attached.  Plaintiff does not consent.  *See* LCvR 7(m).

Date: November 17, 2023.

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

STEPHANIE E. LITOS
Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Chief, Civil Litigation Division, Equity Section

*/s/ Honey Morton*
HONEY MORTON [1019878]
Assistant Chief, Equity Section

*/s/ Adam J. Tuetken*
ADAM J. TUETKEN [242215]
RICHARD P. SOBIECKI [500163]
Assistant Attorneys General
Civil Litigation Division
400 6th Street, NW

Washington, D.C. 20001
Phone: (202) 735-7474
Email: adam.tuetken@dc.gov

*Counsel for Defendant*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LINWOOD ALLEN** | |
| **Plaintiff,** | |
| **v.** | No. 1:20-cv-02453-TSC |
| **DISTRICT OF COLUMBIA,** | |
| **Defendant.** | |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANT'S MOTION TO STAY THE CASE**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 1

LEGAL STANDARD...................................................................................................... 5

ARGUMENT .................................................................................................................. 5

      I.      The Court Should Briefly Wait on *Rahimi* Because It Will Decide Core
             Issues in This Case............................................................................................ 6

      II.     The Balance of Hardships Weighs Decidedly in Favor of a Stay............................ 8

CONCLUSION.............................................................................................................. 13

## INTRODUCTION

The questions in this case are soon to be answered by a higher authority, so this is a classic scenario where the Court should issue a stay pending an authoritative decision coming in just a few months.  In this case, Plaintiff Linwood Allen alleges that the District violated his Second Amendment rights by revoking his concealed carry license due to his demonstrated propensity for violence or instability.  At the heart of that claim are the issues of whether and how governments can, consistent with the Second Amendment, prevent dangerous individuals from getting guns.  The Supreme Court will soon decide in *United States v. Rahimi*, No. 22-915, whether and how governments can, under the new test for Second Amendment challenges, so limit gun access.  Resolution of those issues will go far in resolving the issues here, not to mention save the Court and Parties time and resources.  So the Court should stay the case pending further guidance from the Supreme Court.

## BACKGROUND

This case is a Second Amendment challenge by Allen to the District's revocation of his concealed carry license.  District law allows the carrying of a concealed pistol with a license issued by the Chief of the Metropolitan Police Department (MPD).  *See* D.C. Code §§ 22-4504(a), 22-4506.  To qualify, the applicant must meet several requirements, including that the applicant must be "a suitable person to be so licensed."  *Id.* § 22-4506(a).  Suitability is further defined by regulation, and this case involves only one of several criteria: the applicant must demonstrate that he "[h]as not exhibited a propensity for violence or instability that may reasonably render [his] possession of a concealed pistol a danger to [himself] or another."  24 DCMR § 2335.1(d).  To enable the Chief to make this determination, the applicant provides certain information, *id.* § 2337(d), (e), which the Chief then uses to conduct an investigation,

which may entail interviewing references and reviewing criminal records, *id.* §§ 2338.1, 2338.2(e)–(g).

A concealed carry license is valid for two years.  D.C. Code § 7-2509.03(a), (b)(1). During that time, the Chief may revoke the license if she finds that the licensee no longer meets licensing requirements.  *Id.* § 7-2509.05(a)(1).  A person who had a license revoked could, during the events in this case, appeal to the Concealed Pistol Licensing Review Board (the Board).  *Id.* §§ 7-2509.02(g), 7-2509.03(c), 7-2509.05(a)(4).[1]  If the Board affirmed, the party aggrieved by the Board's decision could petition the D.C. Court of Appeals for judicial review. *See id.* § 7-2509.08(f).

Allen applied for and received a license in 2019.  *Allen v. District of Columbia*, No. 20-cv-2453, 2023 U.S. Dist. LEXIS 60950, at *5 (D.D.C. Mar. 31, 2023).  His license was revoked a few months later upon an audit by MPD and reassessment of his extensive arrest history, which the Chief concluded evinced a propensity for violence or instability that may reasonably render Allen's possession of a concealed pistol a danger to himself or another.  *Id.* at *4–7.  Allen appealed to the Board, which affirmed the Chief's decision.  *Id.* at *12.

Instead of following the prescribed process for judicial review in the District's Court of Appeals, Allen sued the District in this Court in September 2020.  *Id.* at *12–13.  He alleged eight claims, including that the District's revocation of his license violated the Second Amendment.  *Id.*  The District moved to dismiss the Complaint in November 2020.  Defs.' Mot. to Dismiss [22].

---

[1]     Under recently enacted legislation, appeals of concealed carry license decisions will now go to the Office of Administrative Hearings.  Office of Administrative Hearings Amendment Act of 2023, D.C. Law 25-63.

When the Parties briefed the Motion to Dismiss, courts "used a 'two-step' framework in analyzing Second Amendment challenges that combined history with means-end scrutiny." *Allen*, 2023 U.S. Dist. LEXIS 60950, at *20 (quoting *Heller v. District of Columbia*, 670 F.3d 1244, 1252 (D.C. Cir. 2011)).  After the Parties briefed the Motion but before the Court ruled, the Supreme Court, in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), abrogated that two-part test and instead instructed that courts must analyze Second Amendment challenges "solely by relying on" history and tradition.  *Allen*, 2023 U.S. Dist. LEXIS 60950, at *20.  This Court did not invite supplemental briefing on the effect of *Bruen* on the Motion.

The Court then took up the Motion in March 2023 and explained that "[a]lthough the parties filed their briefs before *Bruen* was decided, the court must base its ruling on binding precedent, even if such precedent was decided after the parties filed their briefs."  *Id.* at *25.  The Court noted that there were few cases then applying *Bruen*'s "new framework," so the Court looked to a Fifth Circuit opinion, *United States v. Rahimi*, 61 F.4th 443 (5th Cir.), *cert. granted*, 143 S. Ct. 2688 (2023).  *Allen*, 2023 U.S. Dist. LEXIS 60950, at *23.  That opinion held that an individual subject to a protective order based on a judicial finding that he poses a credible threat of domestic violence must, per the Second Amendment, have access to guns.  *Rahimi*, 61 F.4th at 448.  So the panel facially invalidated a longstanding federal law temporarily prohibiting such individuals from possessing firearms, 18 U.S.C. § 922(g)(8).  *Id.*  The panel reasoned mostly that historical laws, in its view, "only disarmed an offender after criminal proceedings and conviction."  *Id.* at 458.

This Court, for its part, reasoned that Allen's license revocation was similarly based on a history, while long, of arrests and charges but not convictions.  *Allen*, 2023 U.S. Dist. LEXIS

60950, at *26.  The Court thus concluded that, "[a]s in *Rahimi*, the fact that Allen may have been suspected of criminal conduct in the past (but not charged) does not permit [the District] to restrict his Second Amendment rights."  *Id.*  The Court also found that there was no contrary historical evidence yet submitted that "support[ed] excluding someone from the Second Amendment's scope because they were arrested but never convicted."  *Id.*  Nonetheless, the Court dismissed Allen's other claims, leaving only his "as-applied challenge" under the Second Amendment to his license revocation. *Id.* at *14.

The Court later issued a Scheduling Order in June 2023.  Sched. Order [35].  The Order provides that discovery ends in February 2024, and summary judgment briefing takes place from March to early June.  *Id.* at 1.

After the Scheduling Order was entered, the Supreme Court granted certiorari in *Rahimi*. 143 S. Ct. 2688 (2023).  The briefing in *Rahimi* concluded just a few weeks ago.  Reply Brief for the United States, *United States v. Rahimi*, No. 22-915 (U.S. Oct. 25, 2023) ("U.S. Reply"). Among the issues posed by the United States are whether governments can, consistent with the Second Amendment and historical tradition, disarm dangerous individuals and whether the Fifth Circuit correctly performed *Bruen*'s historical inquiry.  Brief for the United States at 6–9, 41–44, *United States v. Rahimi*, No. 22-915 (U.S. Aug. 14, 2023) ("U.S. Br.").  Oral argument was held on November 7.  Oral Arg. Tr., *United States v. Rahimi*, No. 22-914 (U.S. Nov. 7, 2023), https://tinyurl.com/48edky3b.

Meanwhile in this case, the Parties have only just begun discovery.  The District responded to Allen's 56 requests for production on September 28.  Def.'s Ex. A, Def.'s Resps. & Objs. to Pl.'s 1st Set of Reqs. for Produc. (Def.'s Resps.).  The District also served Allen with its first set of requests for production and interrogatories on October 31.  Allen has not yet

responded and has asked the District if he could respond in late December.  He has not sent his own interrogatories.  He did not respond to the District's responses to his requests for production for over seven weeks.

## LEGAL STANDARD

The decision whether to stay a case pending other proceedings is left to the trial court's discretion.  *9REN Holding S.A.R.L. v. Kingdom of Spain*, No. 19-cv-1871, 2020 WL 5816012, at *2 (D.D.C. Sept. 30, 2020) (Chutkan, J.).  "In considering a stay, courts must 'weigh competing interests and maintain an even balance between the court's interests in judicial economy and any possible hardship to the parties.'"  *Id.* (quoting *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732–33 (D.C. Cir. 2012)).

## ARGUMENT

The Supreme Court in *Rahimi* is poised to decide the core Second Amendment issues presented here, so this Court should briefly stay the case until the Court and Parties receive critical guidance from the Supreme Court.  A federal court enjoys the "inherent" power to stay proceedings due to "economy of time and effort for itself, for counsel, and for litigants." *Bledsoe v. Crowley*, 849 F.2d 639, 645 (D.C. Cir. 1988) (internal quotation marks omitted) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).  This power is "appropriately exercised where a separate proceeding bearing upon the case is pending."  *Hulley Enters. Ltd. v. Russian Fed'n*, 211 F. Supp. 3d 269, 276 (D.D.C. 2016); *see also, e.g.*, *P.J.E.S. by & through Francisco v. Mayorkas*, No. 20-cv-2245, 2023 WL 387570, at *5 (D.D.C. Jan. 25, 2023) (staying case pending appellate proceedings that would be binding); *Fonville v. District of Columbia*, 766 F. Supp. 2d 171, 173 (D.D.C. 2011) (same).  When a party requests a stay pending other proceedings, this Court inquires:  "(i) What effect, if any, will the completion of the [Supreme Court's] proceedings have on the proceedings before this Court?; and (ii) How, if at all, will

[Allen] be burdened if a stay is granted, and how, if at all, will [the District] be burdened if a stay is denied?"  *U.S. ex rel. Vt. Nat'l Tel. Co. v. Northstar Wireless, L.L.C.*, 288 F. Supp. 3d 28, 31 (D.D.C. 2017).  Both prongs weigh in favor of a stay.

**I.      The Court Should Briefly Wait on *Rahimi* Because It Will Decide Core Issues in This Case.**

On the first prong, judicial economy weighs in favor of staying this case because the Supreme Court "will almost assuredly answer [ ] key question[s] potentially dispositive in this case."  *Vallejo Ent. LLC v. Small Bus. Admin.*, No. 22-cv-1548, 2023 WL 3275634, at *2 (D.D.C. May 5, 2023).  In *Rahimi*, the United States defends § 922(g)(8) on the ground that governments, consistent with the Second Amendment and historical tradition, have the power to disarm dangerous individuals.  U.S. Br. at 6–9.  The District intends to defend its dangerousness standards on similar grounds here, relying on similar historical sources.  Thus, a central issue in both *Rahimi* and this case is whether restrictions on dangerous individuals' access to guns, like § 922(g)(8) and the District's licensing standards, are constitutional.  How the Supreme Court analyzes and resolves that issue is "potentially dispositive in this case," *Vallejo Ent.*, 2023 WL 3275634, at *2, or at least will "narrow the issues" for this Court to decide, *Landis*, 299 U.S. at 253.  Even if the Court does not directly resolve that issue, "the outcome . . . 'may affect this Court's determinations, at a minimum.'"  *9REN Holding*, 2020 WL 5816012, at *2 (quoting *Hulley*, 211 F. Supp. 3d at 284).

A corollary issue in *Rahimi* is, if governments indeed can disarm dangerous individuals, then what means may governments use to determine if someone is dangerous?  Specifically, the United States and Rahimi disagree over whether the government can disarm only individuals convicted of crimes.  *Compare* Brief for Respondent at 26–27, 32–35, *United States v. Rahimi*, No. 22-915 (U.S. Sept. 27, 2023), *with* U.S. Reply at 6–7, 18–19.  That is precisely what this

6

Court has framed as a central issue in this case.  This Court declined to dismiss Allen's Second Amendment claim because "the fact that Allen may have been suspected of criminal conduct in the past (but not charged) does not permit Defendants to restrict his Second Amendment rights." 2023 U.S. Dist. LEXIS 60950, at *27.  The District and United States respectfully disagree with the idea that criminal convictions are the only way to disqualify a dangerous person from getting guns.  But the Supreme Court is poised to decide the issue in *Rahimi*.

What is more, this Court declined to dismiss Allen's Second Amendment claim by relying extensively on the panel opinion in *Rahimi*.  *Id.* at *23–27.  The Court explained that there were few cases post-*Bruen* applying its "new framework," but "*Rahimi* is analogous to this case."  *Id.* at *23.  The Court then used the *Rahimi* panel's reasoning as the primary basis to deny the District's Motion to Dismiss.  *Id.* at *24.  That panel opinion, however, is now under review by the Supreme Court.  As a result, the Supreme Court's review of the panel's reasoning and holdings will go a long way in resolving or at least shaping the issues here because, in this Court's own view, *Rahimi* "is analogous to this case."  *Id.* at *23.  Allen cannot seriously contend that *Rahimi* will have little effect here.[2]

Moreover, *Rahimi* will be the Supreme Court's first opportunity to clarify its new test for Second Amendment challenges, announced in *Bruen*.  That test has already engendered confusion and myriad questions in the Nation's courts, so the "need for . . . further guidance has become clear."  *Atkinson v. Garland*, 70 F.4th 1018, 1036 (7th Cir. 2023) (Wood, J., dissenting). "In granting certiorari in *Rahimi*, the Supreme Court likely will resolve some of these questions." *United States v. Daniels*, 77 F.4th 337, 361 (5th Cir. 2023) (Higginson, concurring).  Thus, at the

---

[2]    The District proposed a stay to Allen before oral argument in *Rahimi*.  Allen responded a week later, after the oral argument, that he did not consent to a stay.

least, *Rahimi* "will likely . . . 'assist in the determination of the questions of law involved'" here. *Hulley*, 211 F. Supp. 3d at 276 (quoting *Landis*, 299 U.S. at 253).

Unsurprisingly, then, this Court would not be the first to stay a Second Amendment challenge pending *Rahimi*. *See Fooks v. State*, No. 24, 2023 WL 5211064 (Md. Aug. 15, 2023) (staying challenge to felon-in-possession ban); *Fraser v. Alcohol*, No. 22-cv-410, 2023 WL 5617894, at *3 (E.D. Va. Aug. 30, 2023) (staying injunction by considering that *Rahimi* "may provide further clarity on the proper application of the test articulated in *Bruen*"). In fact, the D.C. Court of Appeals has stayed challenges before it to the same licensing statute at issue here. Order, *Epps v. United States*, No. 2020-CF2-003105 (D.C. Oct. 27, 2023). At bottom, because "litigating essentially the same issues in two separate forums is not in the interest of judicial economy or in the parties' best interests regarding time, cost, and effort, it would be prudent to allow the [Supreme Court] to weigh in before proceeding here." *Campaign Legal Ctr. v. Correct the Rec.*, No. 23-cv-75, 2023 WL 2838131, at *4 (D.D.C. Apr. 7, 2023) (internal quotation marks and citation omitted).

## II.    **The Balance of Hardships Weighs Decidedly in Favor of a Stay.**

On the balance of hardships, Allen only faces a minimal delay that is far outweighed by the benefits *Rahimi* will provide and the burdens getting ahead of *Rahimi* will pose.

The only burden Allen faces from a stay is a slight delay, which is not alone enough to weigh against a stay. *See, e.g.*, *Peled v. Netanyahu*, No. 17-cv-260, 2017 WL 7047931, at *2 (D.D.C. Oct. 16, 2017) ("[I]nconvenience of waiting for the resolution of the *Al-Tamimi* appeal does not exceed the benefits of judicial economy and efficiency derived from a stay . . . ."); *Nussbaum v. Diversified Consultants, Inc.*, No. 15-cv-600, 2015 WL 5707147, at *2 (D.N.J. Sept. 28, 2015) ("Because delay results inherently from the issuance of a stay, courts have found that 'mere delay does not, without more, necessitate a finding of undue prejudice and clear

tactical disadvantage.'" (quoting *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 447 (D.N.J. 2014))).

*Rahimi* will be decided, at the latest, by next June.  Because "[s]uch a decision is most likely to

arrive in a matter of 'months, rather than years,'" a stay would not work a substantial hardship to

Allen.  *Campaign Legal Ctr.*, 2023 WL 2838131, at *3 (quoting *Unión Fenosa Gas, S.A. v. Arab

Republic of Egypt*, No. 18-cv-2395, 2020 WL 2996085, at *5 (D.D.C. June 4, 2020)).  Plus,

because this Court can expect a decision by the end of the Supreme Court's term, a stay would

have "a limited duration," and such a stay "is more likely to be granted than an indefinite one."

*Doe v. Sipper*, 869 F. Supp. 2d 113, 118 (D.D.C. 2012); *see also Vallejo Ent.*, 2023 WL

3275634, at *2 (finding that the fact that parties in another case were already on a briefing

schedule "puts a clear and finite timeline on the length of a stay here").

 Further, discovery has hardly started in earnest yet.  No depositions have been scheduled

or held.  Allen himself has asked for an extension into late December on his responses to the

District's requests and interrogatories.  He has not even gotten around to serving interrogatories.

And he took over seven weeks to just acknowledge the District's responses to his requests for

production.  Allen is in no hurry to move this case, so there is little harm to him in a stay.  *See*

*Feld Ent., Inc. v. A.S.P.C.A.*, 523 F. Supp. 2d 1, 4 (D.D.C. 2007) (denying a stay when the

plaintiff "itself has already long delayed its day in court on this claim").[3]  Nor can Allen claim he

was hoping for a decision before *Rahimi* and that a stay would compromise that hope because,

---

[3] Allen has previously indicated to the District that he now is only interested in pursuing
monetary—not injunctive—relief.  Thus, any delay he faces by a stay does not warrant denying a
stay because "[a] delay in compensation for past harms does not equate to a strong showing of
prejudice."  *Bay Area Surgical Grp., Inc. v. Aetna Life Ins. Co.*, No. 13-cv-5430, 2014 WL
2759571, at *5 (N.D. Cal. June 17, 2014); *see Vallejo Ent.*, 2023 WL 3275634, at *3 (finding
that a delay in access to funds did not weigh against a stay).

under the current schedule, the Parties are not even supposed to be done with summary judgment briefing until June.

Yet, both Parties—not just the District—and the Court face burdens and prejudice if this case moves along without regard for *Rahimi*.  Given the limited nature of the stay to one case that is due to be decided in months, the District's showing of hardship absent a stay need not be great.  *Campaign Legal Ctr.*, 2023 WL 2838131, at *3.  But it is substantial in any event.

Namely, proceeding here "would impose litigation costs, including engaging in discovery, which may later be obviated by" a decision in *Rahimi*.  *Id.*  As explained, *Rahimi* is likely to decide core issues in this case.  How those issues get decided could well determine who prevails here or limit the issues requiring discovery or argument.  Any time, money, resources, and effort spent on discovery, motions, or decisions by the Court would be wasted if and when the Supreme Court decides the major issues in this case.

And discovery in this case is shaping up to be costly.  On the underlying facts, the District had hoped that discovery would be narrow and manageable because Allen brings a single-claim, as-applied challenge.  He does not bring a facial challenge; and he does not bring a class action.  Allen, however, has now made clear that he has other ideas.  Although this case only concerns how the District's suitability standard was applied to him, *Allen*, 2023 U.S. Dist. LEXIS 60950, at *14, Allen served *56 requests for documents* that span issues far unrelated to his revocation.  For example, he demands all documents related to any claims from anyone arising from license revocations or denials for the past fifteen years.  Def.'s Resps. at 63.  And he demands the private personnel files and disciplinary records of public servants who had little or no involvement with his revocation.  *E.g.*, *id.* at 28, 30.

10

As a result of his demands, discovery in this case will involve protracted disputes because the District strongly objects to these requests as contrary to Federal Rule of Civil Procedure 26. Those disputes will take up the Court's time if the Parties cannot resolve them on their own.  If the Court finds that Allen's requests somehow satisfy Rule 26, they will also require a time- and cost-consuming undertaking in searching for and producing responsive documents—a clear hardship to the District.[4]

That is just discovery on the underlying facts of Allen's revocation.  Then there is discovery on *Bruen*'s historical inquiry.  That inquiry is demanding and one that the District takes seriously.  To satisfy that inquiry requires extensive historical research and the use of expert historians.  For example, just to carry its burden when opposing a motion for a preliminary injunction in another recent Second Amendment case, the District provided declarations from ten experts.  Def.'s List of Exs. [17-2], *Hanson v. District of Columbia*, No. 22-cv-2256 (D.D.C. Nov. 23, 2022).  This case may require a similar cadre of experts, if not more because this case is at the merits—not preliminary—stage.  To boot, experts in this case will need to produce reports, not just declarations, and be deposed.  That will require more time and effort.  But an expert's time and effort are not free.  And expert fees are paid by the taxpayer when the District is the retaining party.  All said, this case will rack up costs as the next few months go by, absent a stay.

Yet, much of this expert work and historical discovery may be wasted if it precedes *Rahimi*.  The experts here will explore many of the same issues and sources as in *Rahimi*.  But the Supreme Court's own conclusions about whether there is a historical tradition of limiting

---

[4]     In addition to discovery, the Parties are also currently considering settlement proposals. A stay of discovery would thus benefit both Parties and the ultimate resolution of this case by allowing the Parties to focus on settlement instead of discovery.

dangerous individuals' access to guns may "obviat[e]" the need for experts to explore those issues. *Campaign Legal Ctr.*, 2023 WL 2838131, at *3.

Still further, there is insufficient guidance on *how* to litigate *Bruen*'s historical question, and such guidance will direct discovery here. That is, "courts are laboring to give meaning to the *Bruen* requirement of 'historical inquiry.'" *Daniels*, 77 F.4th at 359 (Higginson, J., concurring). For example, *Bruen* leaves unclear whether the government must produce expert evidence, how many historical sources are sufficient to sustain the government's burden, and what types of sources are most relevant. *Id.* at 359–60. *Rahimi* will, however, shed light on *Bruen*'s inquiry. Until then, "[i]n the absence of a stay, the parties will have to expend time and money conducting discovery . . . while lacking a clear idea of the law that will ultimately apply at summary judgment or at trial." *Ambrezewicz v. LeadPoint, Inc.*, No. 16-cv-2331, 2017 WL 8185862, at *4 (C.D. Cal. May 8, 2017).

In sum, "a stay is appropriate if it results in an efficient and accurate decision, so long as the gains outweigh the harm." *Vallejo Ent.*, 2023 WL 3275634, at *3. That is so here. Briefly pausing this case until *Rahimi* is decided will allow the Parties to engage in discovery and merits briefing with a clearer idea of what needs to be explored and decided. But moving forward now will either mean work that is obviated by *Rahimi* or additional work once *Rahimi* is decided. So, "in the short run, while a stay may well delay the resolution of the dispute, in the long run, a stay will still likely be shorter than the possible delay that would occur if" discovery or briefing needs redone in light of *Rahimi*. *Novenergia II - Energy & Env't (SCA) v. Kingdom of Spain*, No. 18-cv-1148, 2020 WL 417794, at *4 (D.D.C. Jan. 27, 2020) (Chutkan, J.) (internal quotation marks and citation omitted).

Getting this case right is of the utmost importance.  For the District, one of its crucial, longstanding (*i.e.*, over a century old) means of protecting the public is at stake.  For Allen, to be fair, his right to keep and bear arms is at stake.  And for this Court, one of its most solemn roles—judicial review of democratically enacted laws—is at play.  The Supreme Court long ago explained that precisely this type of case warrants waiting for critical guidance:  "Especially in cases of extraordinary public moment, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted."  *Landis*, 299 U.S. at 256.  That is this case.

## CONCLUSION

The Court should stay the case pending *Rahimi*.

Date: November 17, 2023.

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

STEPHANIE E. LITOS
Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Chief, Civil Litigation Division, Equity Section

*/s/ Honey Morton*
HONEY MORTON [1019878]
Assistant Chief, Equity Section

*/s/ Adam J. Tuetken*
ADAM J. TUETKEN [242215]
RICHARD P. SOBIECKI [500163]
Assistant Attorneys General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
Phone: (202) 735-7474
Email: adam.tuetken@dc.gov

*Counsel for Defendant*