## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LINWOOD ALLEN** | |
| **Plaintiff,** | |
| **v.** | **No. 1:20-cv-02453-TSC** |
| **DISTRICT OF COLUMBIA,** | |
| **Defendant.** | |

### NOTICE OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STAY THE CASE

**PLEASE TAKE NOTICE** that Plaintiff Linwood Allen, by and through his undersigned counsel, is filing an opposition to Defendant District of Columbia's motion to stay the case.

Date: December 1, 2023.

Respectfully submitted,

*/s/ Jenna H. Pavelec*
Jenna H. Pavelec (D.C. Bar No. 1614398)
Matthew R. Skanchy (D.C. Bar No. 1045601)
(*pro hac vice*)
Kieran Gostin (D.C. Bar No. 1019779)
(*pro hac vice*)

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor Washington,
D.C. 20036
Telephone: (202) 847-4000
Fax: (202) 847-4005
jpavelec@wilkinsonstekloff.com
kgostin@wilkinsonstekloff.com
mskanchy@wilkinsonstekloff.com

Owen W. Gallogly
(*pro hac vice*)

WILKINSON STEKLOFF LLP
130 W 42nd Street, 24th Floor, New York,
NY 10036
Telephone: (212) 294-8917
Fax: (202) 847-4005
ogallogly@wilkinsonstekloff.com

*Attorneys for Plaintiff Linwood Allen*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LINWOOD ALLEN,** | |
| **Plaintiff,** | **No. 1:20-cv-02453-TSC** |
| **v.** | |
| **THE DISTRICT OF COLUMBIA,** *et al.,* | |
| **Defendants.** | |

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>
<u>**IN SUPPORT OF**</u>
<u>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STAY**</u>

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................................... 1

BACKGROUND .......................................................................................................................... 2

STANDARD OF REVIEW ........................................................................................................... 4

ARGUMENT ............................................................................................................................... 5

    I.      The Supreme Court's Disposition of *Rahimi* Will Not Resolve The Legal Questions
           Presented in This Case ........................................................................................... 6

    II.     The Balance of Hardships Weighs Strongly Against Issuance of a Stay ............................. 11

CONCLUSION ............................................................................................................................ 18

## TABLE OF AUTHORITIES

**Cases:**

*9REN Holding S.A.R.L. v. Kingdom of Spain*, No. 19-cv-01871, 2020 WL 5816012 (D.D.C. Sept.
30, 2020) .................................................................................................................................. 16

*Akishev v. Kapustin*, 23 F. Supp. 3d 440 (D.N.J. 2014) .......................................................... 14

*Bay Area Surgical Grp., Inc. v. Aetna Life Ins. Co.*, No. 13-cv-5430, 2014 WL 2759571 (N.D. Cal.
June 17, 2014) ............................................................................................................... 13, 14, 17

*Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724 (D.C. Cir. 2012) ............................... 4, 5

*Campaign Legal Ctr. v. Correct the Rec.*, No. 23-cv-75, 2023 WL 2838131 (D.D.C. Apr. 7, 2023) .... 12

*Dellinger v. Mitchell*, 442 F.2d 782 (D.C. Cir. 1971) .................................................... 5, 8, 16

*Elrod v. Burns*, 427 U.S. 347 (1976) ........................................................................................ 11

*En Fuego Tobacco Shop LLC v. U.S. Food & Drug Admin.*, 356 F. Supp. 3d 1 (D.D.C. 2019) ......... 18

*Epps v. United States*, No. 2020-CF2-003105 (D.C. Oct. 27, 2023) ...................................... 10

*Feld Ent., Inc. v. A.S.P.C.A.*, 523 F. Supp. 2d 1 (D.D.C. 2007) ............................................ 15

*Fooks v. State*, 485 Md. 52 (2023) .......................................................................................... 10

*Fraser v. Alcohol*, No. 22-cv-410, 2023 WL 5617894 (E.D. Va. Aug. 30, 2023) ................. 10

*Garcia v. Acosta*, 393 F. Supp. 3d 93 (D.D.C. 2019) ............................................................. 14

*Gordon v. Holder*, 721 F.3d 638 (D.C. Cir. 2013) .................................................................. 11

*Hisler v. Gallaudet Univ.*, 344 F. Supp. 2d 29 (D.D.C. 2004) ........................................... 5, 17

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ..................................................................... 4, 5, 16

*Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005) ....................................................... 17

*Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299 (1986) ................................................ 14

*Mills v. District of Columbia*, 571 F.3d 1304 (D.C. Cir. 2009) ............................................. 11

*Nat'l Indus. for Blind v. Dep't of Veterans Affs.*, 296 F. Supp. 3d 131 (D.D.C. 2017) ................. passim

*Nken v. Holder*, 556 U.S. 418 (2009) ..............................................................................16

*Novenergia II - Energy & Env't (SCA) v. Kingdom of Spain*, No. 18-cv-1148, 2020 WL 417794 (D.D.C. Jan. 27, 2020) ................................................................................................12

*Nussbaum v. Diversified Consultants, Inc.*, No. 15-cv-600, 2015 WL 5707147 (D.N.J. Sept. 28, 2015) ..........................................................................................................................12, 17

*Schware v. Bd. of Bar Exam. of State of N.M.*, 353 U.S. 232 (1957) ......................................4

*United States ex rel. Vermont Nat'l Tel. Co. v. Northstar Wireless, L.L.C.*, 288 F. Supp. 3d 28 (D.D.C. 2017)............................................................................................................................5

*Vallejo Ent., LLC v. Small Bus. Admin.*, No. 22-cv-1548, 2023 WL 3275634 (D.D.C. May 5, 2023) ..............................................................................................................................13, 14

*Wrenn v. District of Columbia*, 179 F. Supp. 3d 135 (D.D.C. 2016) ................................ 7, 17

## Statutes:

18 U.S.C. § 922(g)(8) ........................................................................................6, 7, 8, 10

D.C. Code § 5-335.01 ................................................................................................9

## Other Authorities:

Brief for the United States, United States v. Rahimi, No. 22-915 (U.S. Aug. 14, 2023)........ 8, 9, 10

Reply Brief for the United States, United States v. Rahimi, No. 22-915 (U.S. Oct. 25, 2023) ......10

Transcript of Oral Argument, United States v. Rahimi, No. 22-915 (U.S. Nov. 7, 2023) ..............9

## Regulations:

24 D.C.M.R. § 2335.1 ........................................................................................... 1, 2, 7

24 D.C.M.R. § 2341.3 ................................................................................................2

## INTRODUCTION

Since 2019, Plaintiff Linwood Allen has vigorously pursued redress for the District of Columbia's violation of his Second Amendment rights.  At every turn, the District has endeavored to prolong this constitutional deprivation without any explanation or justification for its application of a revised policy interpreting the "propensity for violence" standard under 24 D.C.M.R. § 2335.1(d) to Mr. Allen (a policy it still has yet to produce to Mr. Allen despite his Request for Production served on August 8, 2023).  And it continues to do so through its request for a stay.  While the District seeks to minimize the harm to Mr. Allen that would occur from staying this litigation, it ignores the gravity of the irreparable injury caused by the continued deprivation of Mr. Allen's constitutional rights, a deprivation that can only fully be rectified through the injunctive and monetary relief that Mr. Allen continues to seek in this action.

The District asks this Court for a stay pending the Supreme Court's disposition of *United States v. Rahimi*, No. 22-915.  But contrary to the District's assertion, the question presented in *Rahimi* is not the question presented here.  The narrow question in this case is whether the District violated Mr. Allen's Second Amendment rights when it revoked his concealed-pistol permit based on his history of arrests alone, despite the fact that none of those arrests resulted in conviction and that the most serious charges against him were dropped after further investigation revealed that someone else had committed the alleged crimes.  That narrow question will not be answered by the Supreme Court's decision in *Rahimi*, and it is entirely speculative what bearing (if any) the Supreme Court's analysis might have on the distinct legal question presented here.  Thus, there is no basis to stay this case in the hopes of an answer that is unlikely to come—particularly when every additional day of delay perpetuates the years-long deprivation of Mr. Allen's constitutional rights.

**BACKGROUND**

Plaintiff Linwood Allen is a small business owner and father of two who was born and raised in Northeast Washington, D.C.  In 2019, Mr. Allen decided to purchase a firearm to protect himself and his family; Mr. Allen's neighborhood has experienced high crime rates, and he sometimes works odd hours in high-crime areas.  To lawfully carry a concealed firearm in D.C., an individual must apply for and obtain both a firearm registration certificate and a concealed pistol license (CPL) from the Metropolitan Police Department (MPD).  Mr. Allen applied for these permits in May 2019.  As part of his application, Mr. Allen was required to disclose his entire criminal history, which includes several arrests, but no convictions.

MPD reviewed Mr. Allen's applications, determined that he satisfied all applicable requirements, and properly issued Mr. Allen a registration certificate on May 6, 2019, and a CPL on August 15, 2019.  As part of its review of Mr. Allen's CPL application, MPD was required to assess whether he was "suitable" to carry a concealed pistol, which in turn required deciding if Mr. Allen "exhibited a propensity for violence or instability that may reasonably render [his] possession of a concealed pistol a danger to" himself or others.  24 D.C.M.R. § 2335.1(d).  After considering Mr. Allen's application materials, including his prior history of criminal arrests, MPD concluded that he was suitable and issued his CPL accordingly.

Less than three months later, MPD changed its mind.  Despite there being no new or changed information in Mr. Allen's background or applications, MPD sent Mr. Allen two letters on November 5, 2019, revoking both his firearm registration certificate and CPL.  And, notwithstanding D.C. law mandating that MPD provide the CPL licensee with "[t]he reasons the[ir] license was revoked," 24 D.C.M.R. § 2341.3(a), MPD's letters to Mr. Allen offered no explanation other than a list of his unchanged criminal arrest history.

Mr. Allen appealed these revocations fourteen days later.  On February 8, 2020, eighty-eight days after Mr. Allen submitted his appeal, MPD informed him that his firearm registration certificate had been revoked in error but that the revocation of his CPL was intended and remained in effect. Five weeks after that, the MPD finally revealed a bit more about why it suddenly chose to revoke Mr. Allen's CPL.  Specifically, it explained that there had been a "deliberate and principled change in the Chief of Police's position on what it means to have 'exhibited a propensity for violence or instability that may reasonably render the person's possession of a concealed pistol a danger to the person or another,' under D.C. Mun. Regs. tit. 24, § 2335.1(d)."  Compl., ECF No. 1 ¶ 175.  Apparently, the Chief adopted this new interpretation of the "propensity for violence" provision as a result of a self-defense shooting by another CPL holder in D.C.  Under this changed policy, the MPD defended its decision to revoke Mr. Allen's CPL based on his prior arrest history—a history that MPD was aware of at the time it initially approved his CPL—without regard to whether Mr. Allen committed or was convicted for the offenses, or even if they were expunged.

D.C.'s Concealed Pistol Licensing Review Board (CPLRB) reviewed Mr. Allen's appeal of his CPL revocation.  During its review, CPLRB raised numerous questions and concerns regarding the basis for MPD's decision, ordering MPD to explain, *inter alia*, why it "initially approved appellant's CPL application, and then . . . recommended revocation of appellant's CPL, based on what appear to be the same criminal history records."  *Id.* ¶ 171.  Nevertheless, CPLRB ultimately denied Mr. Allen's appeal without a hearing on May 4, 2020.  Mr. Allen filed this suit on September 9, 2020, alleging, among other claims, that the District's revocation of his CPL violated his Second Amendment rights. He sought injunctive and declaratory relief in addition to damages.

In March 2023, this Court granted in part and denied in part the District's motion to dismiss Mr. Allen's suit for failure to state a claim.  Or., ECF No. 30.  In concluding that Mr. Allen had adequately pleaded a violation of his Second Amendment rights, the Court noted that the District "did

3

not marshal any evidence or adequately explain how history and tradition"—the touchstones of Second Amendment analysis under Supreme Court precedent—"support excluding someone from the Second Amendment's scope because they were arrested but never convicted."  MTD Op., ECF No. 29 at 18.  Indeed, the Court recognized that "[t]he mere fact that a man has been arrested has very little, if any, probative value in showing that he has engaged in any misconduct," *id.* (quoting *Schware v. Bd. of Bar Exam. of State of N.M.*, 353 U.S. 232, 241 (1957)), and that "the fact [Mr.] Allen may have been suspected of criminal conduct in the past (but not charged) does not permit [the District] to restrict his Second Amendment rights," *id.*

Following its ruling on the motion to dismiss, the Court issued a Scheduling Order in June 2023.  Under that Order, discovery in this case will conclude in February 2024.  Since that time, the parties have actively engaged in discovery, including exchanging requests for production, requests for admission, interrogatories, and discussing a timeline for depositions.  But though discovery is proceeding apace, it has still been over four years since the District revoked Mr. Allen's CPL—four years of ongoing constitutional violations.

On November 17, 2023, the District moved to stay the case pending the Supreme Court's disposition of *United States v. Rahimi*, No. 22-915.

## STANDARD OF REVIEW

District courts have broad discretion to stay proceedings.  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  In deciding whether to grant a stay, however, courts must "weigh competing interests and maintain an even balance between the court's interests in judicial economy and any possible hardship to the parties."  *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732–33 (D.C. Cir. 2012) (citations omitted).  When a party requests a stay pending the resolution of unrelated legal proceedings, courts consider two questions:  "(i) What effect, if any, will the completion of the [other] proceedings have on the proceedings before this Court?; and (ii) How, if at all, will [the non-moving party] be burdened

4

if a stay is granted, and how, if at all, will [the moving party] be burdened if a stay is denied?" *United States ex rel. Vermont Nat'l Tel. Co. v. Northstar Wireless, L.L.C.,* 288 F. Supp. 3d 28, 31 (D.D.C. 2017).

That said, "[d]espite the broad discretion afforded to the courts in granting a stay, it is well established that a stay pending the resolution of unrelated legal proceedings is an *extraordinary remedy*." *Nat'l Indus. for Blind v. Dep't of Veterans Affs.*, 296 F. Supp. 3d 131, 137 (D.D.C. 2017) (Jackson, J.) (emphasis added). "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Belize Soc. Dev. Ltd.*, 668 F.3d at 732 (citation omitted). The party seeking the stay thus "bears the burden of showing that the stay is needed and warranted." *Nat'l Indus. for Blind*, 296 F. Supp. 3d at 137. If "there is 'even a fair possibility' that a stay would adversely affect another party, the movant for the stay must demonstrate a 'clear case of hardship or inequity in being required to go forward.'" *Id.* at 137–38 (quoting *Landis*, 299 U.S. at 255, 257); *see also Hisler v. Gallaudet Univ.*, 344 F. Supp. 2d 29, 35 (D.D.C. 2004) (moving party "shoulders the burden in demonstrating a clear case of hardship" (quotation marks omitted)). "This consideration is of particular importance where the claim being stayed involves a not insubstantial claim of present and continuing infringement of constitutional rights." *Dellinger v. Mitchell*, 442 F.2d 782, 787 (D.C. Cir. 1971).

## ARGUMENT

Defendants have not met their burden to establish that this case should be stayed pending the Supreme Court's disposition of *Rahimi*. *Rahimi* presents a fundamentally different question than this case, so the Supreme Court's decision there is unlikely to have any significant effect on the proceedings here. And the harm caused to Mr. Allen by further delay—and continued denial of his constitutional rights—far outweighs any burden on the District.

I.      **The Supreme Court's Disposition of Rahimi Will Not Resolve The Legal Questions Presented in This Case.**

Judicial economy would not be served by staying this case pending the Supreme Court's disposition of *Rahimi* for a simple reason:  the question presented in *Rahimi* is fundamentally distinct from the legal issues in this case.  Regardless of how the Supreme Court resolves *Rahimi*, its decision is therefore highly unlikely to resolve Mr. Allen's claims.  As a result, the District cannot make "a clear showing that a stay would necessarily result in *any* efficiency gains at all, much less the significant savings that would warrant the imposition of such a substantial delay."  *Nat'l Indus. for Blind v. Dep't of Veterans Affs.*, 296 F. Supp. 3d 131, 143 (D.D.C. 2017) (emphasis in original).

Contrary to the District's assertion, the issues in *Rahimi* are *not* the same "core Second Amendment issues presented here."  Def. Mem. at 5.  In *Rahimi*, the Supreme Court will decide whether 18 U.S.C. § 922(g)(8), which prohibits the possession of firearms by persons subject to domestic-violence restraining orders, violates the Second Amendment on its face.  By contrast, Mr. Allen claims that the District violated his Second Amendment rights when it revoked his CPL based on unproven and expunged criminal charges.  Although both cases involve Second Amendment claims, the similarities end there:  Mr. Allen's case does not involve 18 U.S.C. § 922(g)(8), Mr. Allen is not subject to a restraining order (or any other judicial determination about his potential dangerousness), and there are no allegations of domestic violence against Mr. Allen (much less any record evidence of any violent conduct by Mr. Allen at all).

According to the District, the common question between *Rahimi* and this case "is whether restrictions on dangerous individuals' access to guns, like § 922(g)(8) and the District's licensing standards, are constitutional."  Def. Mem. at 6.  But as Mr. Allen has made clear throughout this litigation and this Court recognized in its motion-to-dismiss order, Mr. Allen is not challenging the District's ability to place restrictions on dangerous individuals' access to guns.  Instead, Mr. Allen

challenges the District's revocation of his CPL based on its new interpretation of 24 DCMR § 2335.1(d), which apparently resulted in treating Mr. Allen's history of unproven and expunged charges as though they were criminal convictions.  *See* MTD Op. at 17 ("Here, Allen challenges Defendants' new interpretation of 'propensity for violence or instability' under 24 DCMR § 2335.1(d) as unconstitutional as applied to him."); *see also id.* at 18 ("The court finds that Allen has adequately pleaded an as-applied challenge to Defendants' revised interpretation of 24 DCMR § 2335.1(d).").[1] Mr. Allen's case thus raises legal issues that are entirely separate from the broader question of the constitutionality of laws restricting dangerous individuals' access to guns.  And the District fails to explain why the Supreme Court's resolution of that separate, broader question would be "potentially dispositive" of the issues here.  Def. Mem. at 6.  Whatever the Supreme Court decides about the constitutionality of 18 U.S.C. § 922(g)(8), the key issues in Mr. Allen's case will remain for this Court to resolve.

The District suggests that this case might be affected by the Court's resolution of a "corollary issue in *Rahimi*," namely "what means may governments use to determine if someone is dangerous?" Def. Mem. at 6.  But that is not the question on which the Supreme Court granted certiorari, so there is no reason to expect that it will resolve that question and even less reason to expect that it will do so in a way that would affect this Court's analysis of the particular facts of Mr. Allen's case.  *See Wrenn v. District of Columbia*, 179 F. Supp. 3d 135, 139 (D.D.C. 2016) (denying a stay where the court found the moving party's "arguments regarding the future effect of any decision by the D.C. Circuit on the

---

[1] Although Mr. Allen's primary claim is an as-applied challenge, his complaint also raised a facial challenge to the District's apparent policy of restricting Second Amendment rights based on unproven conduct and the fact of arrests alone.  *See* Compl., ECF No. 1 at ¶ 318.  Because the District has yet to produce the policy to Mr. Allen, it is premature to determine whether the District's actions were simply unconstitutional as applied to Mr. Allen, or if the District's "suitability" policy is unconstitutional on its face.  Thus, Mr. Allen reserves the right to pursue his facial challenge to the policy, depending on its specific details.

interlocutory appeal to be highly speculative"); *cf. Dellinger v. Mitchell*, 442 F.2d 782, 787 (D.C. Cir. 1971) (reversing a district court's stay pending a related proceeding where the court "[could] not be certain that the other [court] would determine the issue" common to the two cases).

What the District's argument ultimately boils down to is that the Supreme Court's opinion in *Rahimi* will require it to interpret the Second Amendment, and that interpretation might offer some guidance on how future Second Amendment cases, including this one, are to be resolved. But that is no less true of every case that the Supreme Court decides. Taken on its own terms, the District's position "would support a district court stay of proceedings in a case whenever the same question is involved before another court in litigation not involving the parties protesting the stay." *Dellinger*, 442 F.2d at 787. That is not the law, nor is it the practice in the district courts. And for good reason: staying litigation in cases like Mr. Allen's delays vindication of constitutional rights.

Moreover, the facts of *Rahimi* differ in important ways from those in the instant case. Mr. Rahimi assaulted his then-girlfriend and fired a gun at a witness to the assault; a Texas court thereafter held a hearing, at which Mr. Rahimi participated, and entered a protective order limiting Mr. Rahimi's contact with his then-girlfriend and her family; and Mr. Rahimi was later convicted of possessing a firearm in violation of 18 U.S.C. § 922(g)(8), which prohibits individuals subject to certain domestic-violence protective orders from possessing firearms. *See* Brief for the United States at 2-5, United States v. Rahimi, No. 22-915 (U.S. Aug. 14, 2023) (U.S. Br.). By contrast, Mr. Allen was wrongly identified and arrested for crimes he did not commit; those charges were subsequently dropped, and the District has yet to identify any facts in the record indicating that he has engaged in any violent conduct at all.[2] Whereas Mr. Rahimi's gun rights were restricted after a Texas state court adjudicated

---

[2] Of the six arrests that MPD listed in its letter revoking Mr. Allen's CPL, four involved non-violent offenses. Two, for non-violent drug offenses, occurred when Mr. Allen was a juvenile; he was not convicted in either case. Two others, for illegal gambling, occurred over fifteen years ago and

domestic violence allegations against him and entered a protective order, Mr. Allen's CPL was revoked after MPD reviewed his arrest history and determined (based on the fact of the prior arrests alone) that he could have a "propensity for violence." Those factual differences matter: whatever one thinks of the merits of Mr. Rahimi's Second Amendment claim, there was at least a substantiated factual basis for restricting his gun rights based on dangerousness; the same cannot be said for Mr. Allen.

Indeed, at oral argument in *Rahimi*, Solicitor General Prelogar conceded that cases like Mr. Allen's would present a much harder question: she explained that a case involving an "executive branch or an administrative determination" of dangerousness (like the assessment MPD made in Mr. Allen's case) would be "far more difficult to defend" under the Second Amendment than a judicial determination (like the protective order entered in Mr. Rahimi's case) "because of a separate Second Amendment principle that guards against granting executive officials too much discretion to decide who and who cannot have firearms." Transcript of Oral Argument at 34-35, United States v. Rahimi, No. 22-915 (U.S. Nov. 7, 2023).

There is yet another way in which Mr. Allen's case is meaningfully different from—and more difficult than—*Rahimi*. As the United States' brief in *Rahimi* pointed out, "[a] protective order triggers disarmament under Section 922(g)(8) only if it satisfies stringent requirements," including specific judicial findings, made after "actual notice" and "a hearing," that the individual being disarmed presented "a real danger." U.S. Br. at 32-34 (quotation marks omitted). These procedural safeguards

---

were resolved through the District's "post-and-forfeiture" process, which does not result in "conviction of a crime." D.C. Code § 5-335.01(e)(6). Nor may post-and-forfeiture resolutions be relied upon "by any District of Columbia court or agency" to impose a "sanction, penalty, enhanced sentence, or civil disability" in "a subsequent criminal, civil, or administrative proceeding or administrative action," *id.,* an unqualified command that the MPD blatantly ignored by considering Mr. Allen's gambling arrests in revoking his CPL. Finally, the two times in which Mr. Allen was arrested for violent crimes, he was ultimately proven innocent beyond any doubt by video and DNA evidence. Nevertheless, MPD apparently considered those arrests in determining that Mr. Allen had a "propensity for violence."

"confine the statute to the most dangerous domestic abusers and guard against the risk of inadvertently disarming law-abiding, responsible citizens." *Id.* at 32.  The government expressly acknowledged that the case would be different were the statute not to contain such elaborate safeguards or if an individual brought an as-applied challenge to their administration.  *See id.*; Reply Brief for the United States at 18, United States v. Rahimi, No. 22-915 (U.S. Oct. 25, 2023).  But, the United States explained, *Rahimi* itself is "particularly straightforward"; the "Court need not decide here whether the Second Amendment requires" § 922(g)(8)-style procedures or weigh in on their application, as Mr. Rahimi brought only a facial challenge to a statute that included such protections. U.S. Br. at 32.  The opposite is true here:  Mr. Allen brings an as applied challenge to the District's revocation process, which is bereft of safeguards like those in § 922(g)(8).  In other words, this case presents the precise questions that the Solicitor General advised the Supreme Court it need *not* decide in *Rahimi.*  As such, the District's insistence that the "questions in this case are soon to be answered by a higher authority" is mystifying.  Def. Mem. at 1.

The District attempts to downplay the magnitude of its request to stay Mr. Allen's constitutional challenge by citing other recent stays in Second Amendment cases.  None of those circumstances are comparable to this case.  In *Fooks v. State*, the Maryland Supreme Court granted an *unopposed* stay motion.  485 Md. 52, 52 (2023).  In *Fraser v. Alcohol*, the district court stayed its *injunction* of a firearm restriction pending appeal—it did not stay the litigation.  No. 22-cv-410, 2023 WL 5617894, at *3–4 (E.D. Va. Aug. 30, 2023).  The stay in *Fraser* was also unopposed, a fact on which the court expressly relied in determining that plaintiffs would not be "substantially injured" by the delay.  *Id.* at *4 (quotation marks and alteration omitted).  And in *Epps v. United States*, the individual gun owner sought a stay of his appeal pending *Rahimi*, which the government supported.  Order, No. 2020-CF2-003105 (D.C. Oct. 27, 2023).

In sum, there is "considerable uncertainty" whether the Supreme Court's decision in *Rahimi* would affect the outcome in this case. *Nat'l Indus. for Blind*, 296 F. Supp. 3d at 142. If the Court entered a stay, in all likelihood, next summer "this case would begin again on square one after having been held in abeyance" for many months, and "no efficiency gains would have been realized from having required Plaintiffs to stand aside." *Id.* at 142–43 (quotation marks and alteration omitted). Judicial economy would not be served by that result.

## II.   The Balance of Hardships Weighs Strongly Against Issuance of a Stay

Given the District's refusal to reverse its unconstitutional revocation of Mr. Allen's CPL, the balance of hardships tips decidedly against issuing a stay that would needlessly prolong this burden on Mr. Allen's constitutional rights. The District's efforts to portray the harm that a stay would cause Mr. Allen as slight and its corresponding duty to establish hardship as light are misleading and erroneous.

For starters, the District's claim that Mr. Allen would face only minimal harm if this Court issues a stay pending *Rahimi* ignores the fundamental principle that Mr. Allen suffers irreparable harm each day that he is deprived of his constitutional right to bear arms. As the Supreme Court has acknowledged, "[t]he loss of [constitutional] freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality op.), and the D.C. Circuit has likewise recognized that "a prospective violation of a constitutional right constitutes irreparable injury," *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013), particularly where the violation is ongoing or imminent, *id.*; *see also id.* (noting that suits for "injunctive relief against the threatened invasion of a constitutional right do not ordinarily require proof of any injury other than the threatened deprivation itself"); *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) ("It has long been established that the loss of constitutional freedoms, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'" (citation omitted)).

11

There is no question at this point that Mr. Allen adequately pleaded a violation of his constitutional rights and that the District's violation of those rights is ongoing.  There is likewise no question as to the cause of that ongoing violation—the District's voluntary (and unconstitutional) enforcement against Mr. Allen of its policy reinterpreting the suitability standard for CPLs.  That alone is enough to establish that Mr. Allen will suffer irreparable harm if the District's motion to stay is granted.  As then-Judge Jackson explained, where a government defendant makes a "voluntary decision to continue to implement the policy that Plaintiffs are challenging," it is "next to impossible for Defendants to maintain that there is no possibility that Plaintiffs will suffer harm from a stay." *Nat'l Indus. for Blind v. Dep't of Veterans Affs.*, 296 F. Supp. 3d 131, 140 (D.D.C. 2017).  The same is true here, where each passing day only prolongs and compounds the injury to Mr. Allen's Second Amendment rights.

Yet the District refuses even to acknowledge the harm wrought by its continuing denial of Mr. Allen's constitutional rights and blithely maintains that the "only burden Allen faces from a stay is a slight delay."  Def. Mem. at 8.  In fact, of the eleven cases that the District cites in support of its claim that a stay would impose minimal hardship on Mr. Allen, *not one* involved a constitutional claim.  The burdens associated with a delay in enforcing a foreign arbitral award (on which interest is accruing), *Novenergia II - Energy & Env't (SCA) v. Kingdom of Spain*, No. 18-cv-1148, 2020 WL 417794, at *4 (D.D.C. Jan. 27, 2020), avoiding telemarketing calls, *Nussbaum v. Diversified Consultants, Inc.*, No. 15-cv-600, 2015 WL 5707147, at *1 (D.N.J. Sept. 28, 2015), or vindicating "informational interests" under the federal election laws, *Campaign Legal Ctr. v. Correct the Rec.*, No. 23-cv-75, 2023 WL 2838131, at *3 (D.D.C. Apr. 7, 2023), are plainly not comparable to the irreparable harm caused by an ongoing deprivation of a fundamental freedom enshrined in the Bill of Rights.  Consequently, the District's entire balance of hardship analysis is simply inapposite, as it makes no effort to account for the primary burden a stay would impose on Mr. Allen.

Instead, the District offers a smattering of assertions that minimize the harm a stay would cause Mr. Allen and obfuscate what is at stake in this case.  Specifically, it maintains that Mr. Allen has disavowed his claim for injunctive relief; that Mr. Allen has purposefully delayed the proceedings "so there is little harm to him in a stay," Def. Mem. at 9; and that a stay would further to-date unproductive and unpromising settlement discussions.  Each of those assertions is false, irrelevant, or both.

Contrary to the District's claims, Mr. Allen continues to seek injunctive, declaratory, and monetary relief for the ongoing deprivation of his constitutional rights.  As made abundantly clear in his Complaint, Mr. Allen seeks an order from this Court that: (1) enjoins the District's "unlawful policy"; (2) enjoins the District "from enforcing the revocation of Mr. Allen's [CPL]"; (3) directs the District to "reinstate Mr. Allen's [CPL] or, in the alternative, . . . reanalyze Mr. Allen's qualifications for possessing [a CPL]" within 30 days of the Court's order; (4) declares that "the administrative record in Mr. Allen's case does not support a finding of a 'propensity for violence' under D.C. law;" and (5) declares that the District's "policy of revoking firearm registration certificates and/or concealed pistol licenses on its face and as applied to Mr. Allen was unconstitutional."  Compl. ¶ 318.  Mr. Allen has not withdrawn his claims for any of the foregoing relief.  And because an injunction or declaratory judgment ordering the District to reinstate or reevaluate Mr. Allen's CPL would remedy his current and prospective constitutional injuries, any delay in Mr. Allen's ability to obtain such relief will automatically result in his suffering further harm.

In light of Mr. Allen's claims for injunctive and declaratory relief, the District's reliance on *Bay Area Surgical Group, Inc. v. Aetna Life Insurance Company*, No. 13-cv-5430, 2014 WL 2759571 (N.D. Cal. June 17, 2014) and *Vallejo Entertainment, LLC v. Small Business Administration*, No. 22-cv-1548, 2023 WL 3275634 (D.D.C. May 5, 2023) is inapposite.  In *Bay Area Surgical*, the court stayed an action brought by a group of medical service providers under the Employee Retirement Income Security Act.  Plaintiffs raised no constitutional claims, and "the crux" of their complaint was a demand for money

damages; as the court explained, plaintiffs' request for injunctive relief did not weigh against a stay because the "specific injunction sought in this case is one designed solely to prevent further financial harm." *Bay Area Surgical*, 2014 WL 2759571, at *5. Similarly, in *Vallejo Entertainment*, Plaintiff's claim arose, not under the Constitution, but under the Administrative Procedure Act, and related to financial aid withheld under the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act. The plaintiff did not seek an injunction; instead, it sought funds that would be available were it to prevail on its claims. *Vallejo Ent.*, 2023 WL 3275634, at *1–3. Here, although Mr. Allen seeks damages, the injunctive and declaratory relief he seeks is unrelated to monetary compensation and is tailored to directly and immediately restore his constitutional rights. Thus, cases like *Bay Area Surgical* and *Vallejo Entertainment,* which do not raise constitutional claims and involve exclusively monetary damages for past harms, have no bearing on the propriety of a stay in this case.

In any event, it would make no difference if Mr. Allen were seeking only money damages. Courts regularly recognize prospective monetary injuries as a substantial hardship that weighs against the issuance of a stay. *See, e.g.*, *Garcia v. Acosta*, 393 F. Supp. 3d 93, 110 (D.D.C. 2019); *Nat'l Indus. for Blind*, 296 F. Supp. 3d at 139–41; *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 447 (D.N.J. 2014). Mr. Allen has suffered and will continue to suffer physical and mental repercussions stemming from the District's infringement of his right to bear arms. These current and future injuries include physical injury, "personal humiliation, and mental anguish and suffering," proper subjects for compensatory damages in a § 1983 action. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306–07 (1986). The District's contrary argument based on *Bay Area Surgical* thus remains unavailing, as that case merely held that "[a] delay in compensation for *past harm* does not equate to a strong showing of prejudice" to avoid a stay. 2014 WL 2759571, at *5 (emphasis added). While Mr. Allen has indeed endured past harm due to the District's unconstitutional revocation of his CPL, his damages claim is not so limited.

14

He will continue suffering compensable monetary injury until his CPL is restored, making a stay inappropriate even on the District's erroneous description of Mr. Allen's prayer for relief.

The District's second attempt to minimize the gravity of Mr. Allen's ongoing harm is equally baseless. The District posits that a stay would not harm Mr. Allen because—by granting the District multiple requested extensions on its deadline to respond to requests for production and seeking a reciprocal extension for deadlines to respond to discovery requests—the District says that Mr. Allen is "in no hurry to move this case." Def. Mem. at 9. But the background of this case belies any such assertions. Despite repeated delays and obfuscation by the District, Mr. Allen has diligently sought the restoration of his constitutional rights. For example, just fourteen days after learning of the revocation of his CPL, Mr. Allen appealed that decision to the CPLRB. Compl. ¶¶ 132-143, 153. After lengthy delays by both the MPD and CPLRB, the CPLRB finally denied his appeal on May 4, 2020. *Id.* ¶¶ 198-216. Mr. Allen responded by promptly filing the instant action on September 9, 2020. Mr. Allen's meticulous and timely pursuit of his rights is worlds apart from the dilatory conduct of the parties in *Feld Ent., Inc. v. A.S.P.C.A.*, 523 F. Supp. 2d 1 (D.D.C. 2007), to whom the District unfairly compares him, *see* Def. Mem. at 9. In that case, the party opposing a stay was found to have "waited a significant amount of time before bringing" its claims, and the delay "was improperly motivated and intended to prolong" a separate action. *Feld Ent.*, 523 F. Supp. 2d at 4. Nothing could be further from the truth here. Moreover, the District offers no principled reason or supporting authority to suggest that the professional courtesy of granting the District's requested extensions on discovery requests—months before the close of discovery—could somehow constitute a purposeful delay or manifest an absence of harm.

Finally, the District asserts that the parties are currently considering settlement proposals and that they would benefit from a stay to continue these discussions. Def. Mem. at 11 n.4. Again, contrary to the District's assertions, there are no pending settlement offers by the parties being

considered and, to-date, all settlement discussions have been unpromising and provide no reason to believe they will not remain so. The case schedule adopted by this Court already provides the parties sufficient time to explore alternative resolutions to their dispute, and any further extension of that schedule would not benefit those discussions but instead would simply prolong the deprivation of Mr. Allen's rights.

Given the substantial harm that a stay would impose on Mr. Allen, the District "must make out a clear case of hardship or inequity in being required to go forward." *9REN Holding S.A.R.L. v. Kingdom of Spain*, No. 19-cv-01871, 2020 WL 5816012, at *2 (D.D.C. Sept. 30, 2020); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) (requiring such a showing "if there is even a fair possibility that the stay . . . will work damage to someone else."); *Nat'l Indus. for Blind*, 296 F. Supp. 3d at 141 ("[H]aving created the conditions by which Plaintiffs now credibly claim that there is a fair possibility that the stay will injure them, equity demands that Defendants demonstrate clearly a justification for the potential harm"). Of course, no stay is granted as "a matter of right;" the "party requesting a stay bears the burden of showing that the circumstances" justify it. *Nken v. Holder*, 556 U.S. 418, 433–34 (2009). But that burden is doubly heavy here, as "it is well established that a stay pending the resolution of unrelated legal proceedings is an extraordinary remedy." *Nat'l Indus. for Blind*, 296 F. Supp. 3d at 137; *see also Landis*, 299 U.S. at 255 ("Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."). Indeed, it might well be triply heavy, given that a stay would delay the adjudication of Mr. Allen's constitutional claim, a result that the D.C. Circuit rightly views with skepticism. *See Dellinger v. Mitchell*, 442 F.2d 782, 787 (D.C. Cir. 1971) ("[A] balanced finding that [the stay proponent's] need overrides the injury to the parties being stayed . . . is of particular importance where the claim being stayed involves a not insubstantial claim of present and continuing infringement of constitutional rights.").

The District cannot shoulder this extraordinary burden. Indeed, it hardly even tries, preferring to pretend as if the purportedly "limited nature of the stay" means "the District's showing of hardship absent a stay need not be great." Def. Mem. at 10. As discussed, that is wrong. And anyway, the two so-called hardships that the District does identify, high litigation costs and the potential that the Supreme Court's opinion in *Rahimi* will affect the law governing this action, do not come close to tipping the balance of equities in its favor.

For one, the burdens typically associated with litigating a case—discovery, motions practice, and the like—are never sufficient to justify a stay, especially where the other party would suffer substantial harm from the delay. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) ("[B]eing required to defend a suit, without more, does not constitute a clear case of hardship or inequity" (quotation marks omitted)); *Nussbaum*, 2015 WL 5707147, at *2 (holding that defendant's interest in "avoiding unnecessary discovery and motion practice" did not constitute "a clear case of hardship"); *Bay Area Surgical*, 2014 WL 2759571, at *3 ("[T]he moving party must cite to something more than the intrinsic inconvenience arising from involvement in litigation"). Moreover, the parties are continuing to meet and confer about the appropriate scope of discovery in this case.

The District's arguments based on *Rahimi* fare no better. As discussed, it is highly speculative that the Supreme Court's opinion in *Rahimi* will resolve—or even squarely address—most of the issues in this case. Thus, the District's fears of wasted discovery and briefing efforts are unlikely to materialize. *Cf. Wrenn v. District of Columbia*, 179 F. Supp. 3d 135, 137 (D.D.C. 2016) (denying a request for a stay pending an appellate decision where the stay proponent's "arguments regarding the future effect of [that decision]" on the resolution of the case at hand were "highly speculative"); *see also Hisler v. Gallaudet Univ*, 344 F. Supp. 2d 29, 35 (D.D.C. 2004) ("stating a possibility of inconsistencies in rulings on the same issue . . . does not establish, in itself, a clear case of hardship" (quotation marks omitted)). In any event, the remote possibility that waiting for the Supreme Court's opinion might

17

obviate some of the District's litigation costs cannot possibly justify extending Mr. Allen's constitutional injury for months on end.  As the court observed in *En Fuego Tobacco Shop LLC v. United States Food & Drug Administration*, "it would be patently unfair" to "further delay reaching the merits" of a plaintiff's constitutional claims for the sole reason that a pending appellate opinion might affect the governing legal standard.  356 F. Supp. 3d 1, 11–12 (D.D.C. 2019).  At this point, Mr. Allen has been deprived of his Second Amendment rights for over three years.  Plaintiffs in *En Fuego* had filed their claims only a year earlier, yet the court still concluded that they had "waited long enough" for their day in court. *Id.* at 12. So has Mr. Allen.

## CONCLUSION

The Court should deny the District's motion to stay the case pending *Rahimi*.

Dated: December 1, 2023

Respectfully submitted,

*/s/ Jenna H. Pavelec*
Jenna H. Pavelec (D.C. Bar No. 1614398)
Matthew R. Skanchy (D.C. Bar No. 1045601)
(*pro hac vice*)
Kieran Gostin (D.C. Bar No. 1019779)
(*pro hac vice*)

WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor Washington,
D.C. 20036
Telephone: (202) 847-4000
Fax: (202) 847-4005
jpavelec@wilkinsonstekloff.com
kgostin@wilkinsonstekloff.com
mskanchy@wilkinsonstekloff.com

Owen W. Gallogly
(*pro hac vice*)

WILKINSON STEKLOFF LLP
130 W 42nd Street, 24th Floor, New York,
NY 10036
Telephone: (212) 294-8917
Fax: (202) 847-4005
ogallogly@wilkinsonstekloff.com

*Attorneys for Plaintiff Linwood Allen*

18

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that on this 1st day of December 2023, a true and correct copy of the foregoing document was served upon the parties in this case via the Court's electronic filing system and is available for viewing and downloading from the ECF system.


Dated: December 1, 2023                                          By: _/s/ Jenna H. Pavelec_
                                                                                   Jenna H. Pavelec