UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LINWOOD ALLEN**  <br><br>    **Plaintiff,**  <br><br>    v.  <br><br> **DISTRICT OF COLUMBIA,**  <br><br>    **Defendant.** | No. 1:20-cv-02453-TSC |

**DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR RELIEF UNDER RULE 54(b) OR RULE 60(b)(1)**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

BACKGROUND .............................................................................................................................. 1

      I.      Statutory and Regulatory Background .................................................................... 1

      II.     Facts and Procedural History ................................................................................. 2

LEGAL STANDARD ...................................................................................................................... 6

ARGUMENT ................................................................................................................................... 6

      I.      The Court Correctly Dismissed the Claims for Injunctive Relief Against
            the Individual Defendants in Their Personal Capacities. ....................................... 6

      II.     The Court Correctly Dismissed a Second Amendment Claim Regarding
            Allen's Firearm Registration Certificate. ............................................................. 12

CONCLUSION .............................................................................................................................. 17

## INTRODUCTION

Nearly a year after the Court dismissed almost all his claims, Plaintiff Linwood Allen suddenly decided that the Court committed two errors in its dismissal order. But it is Allen—not the Court—who commits error. First, he charges the Court with erroneously dismissing claims for injunctive relief against individual defendants in their personal capacities. But such claims are not cognizable here. Second, he charges the Court with erroneously dismissing a Second Amendment claim arising from a proposed revocation of his firearm registration certificate. But there was never a legally effective revocation, and even if there was, the allegedly unconstitutional policy that Allen challenges here did not cause that revocation. Thus, Allen fails to identify any error—let alone clear error—in this Court's dismissal order, so the Court should deny his motion [58] for relief under Fed. R. Civ. P. 54(b) or 60(b)(1).

## BACKGROUND

### I.   Statutory and Regulatory Background

District of Columbia (District) law regulates the possession and carrying of firearms through registration and licensing, respectively. Starting with the former, to possess a firearm in the home, a person must register it. D.C. Code § 7-2502.01(a). The Metropolitan Police Department (MPD), specifically its Firearms Registration Branch, issues registration certificates when certain requirements are met. *Id.* § 7-2502.03(a). MPD may revoke a certificate if it finds that requirements are no longer met. *Id.* §§ 7-2502.09(a)(1), 7-2502.10(a). To revoke a certificate, MPD provides notice of a proposed revocation. *Id.* § 7-2502.10(b). The registrant may appeal to the Chief, then to the Office of Administrative Hearings (OAH), and then to the D.C. Court of Appeals. *Id.* §§ 7-2502.10(a)–(b), 2-1831.03(b-2)(2). A revocation is not effective until the appeal is resolved. *Id.* § 7-2502.10(b).

District law also allows the carrying of a concealed pistol with a license issued by MPD. *See id.* §§ 22-4504(a), 22-4506. To qualify for a concealed pistol license (sometimes called a CPL), an applicant must register the gun he intends to carry. *Id.* § 7-2509.02(a)(2). A license applicant must meet additional requirements, including that the applicant must be "a suitable person to be so licensed." *Id.* § 22-4506(a). Suitability is further defined by a regulation, which provides that an applicant is suitable if he "[h]as not exhibited a propensity for violence or instability that may reasonably render [his] possession of a concealed pistol a danger to [himself] or another." 24 DCMR § 2335.1(d).

A concealed carry license is valid for two years. D.C. Code § 7-2509.03(a), (b)(1).[1] MPD may revoke a license if it finds that the holder no longer meets the requirements for licensure. *Id.* § 7-2509.05(a)(1). A person who had a license revoked could, during the events in this case, appeal to the Concealed Pistol Licensing Review Board (the Board). *Id.* §§ 7-2509.02(g), 7-2509.03(c), 7-2509.05(a)(4) (2019).[2] If the Board affirmed the revocation, the individual could petition the D.C. Court of Appeals for a judicial determination of, among other things, whether he met the licensing standards, whether MPD's decision was supported by substantial evidence, and whether MPD's decision was arbitrary and capricious. *See id.* §§ 7-2509.08(f), 2-510(a)(3) (2019).

## II. Facts and Procedural History

Allen received a registration certificate and license in 2019. *Allen v. District of Columbia* (*MTD Op.*), No. 20-cv-2453, 2023 U.S. Dist. LEXIS 60950, at *5 (D.D.C. Mar. 31, 2023).

---

[1]  In contrast, firearm registration certificates do not expire and do not require renewal. MPD, *General Order 902.01: Firearms Registration and Concealed Pistol Licenses* at 2 (Dec. 15, 2023), https://go.mpdconline.com/GO/GO_902_01.pdf.

[2]  Under recent statutory amendments, appeals of concealed carry license decisions now go to OAH. D.C. Code § 7-2509.08(a).

2

According to the Complaint [1], his license was revoked a few months later upon an audit by MPD, reassessment of his extensive arrest history, and application of a revised interpretation of the suitability standard in 24 DCMR § 2335.1(d).  *Id.* at *4–7.  MPD also proposed to revoke his registration certificate.  *Id.* at *6–7.  MPD's notice regarding Allen's registration certificate did not mention the suitability standard—indeed, that standard applies to licenses, not registration.  Def.'s Ex. A, Oct. 31, 2019, Ltr. (Reg. Not.).  But MPD did notify Allen of his appeal rights.  *Id.* at 1–2.

Allen appealed the proposed revocation of his registration certificate within MPD.  *MTD Op.*, 2023 U.S. Dist. LEXIS 60950, at *7.  MPD notified Allen in February 2020 that "registration was revoked in error and your firearm registration is now fully reinstated." Def.'s Ex. B, Feb. 8, 2020, Ltr. (Reg. Ltr.).  MPD clarified that "[o]nly your concealed carry pistol license was intended to be revoked."  *Id.*; *see also* Compl. ¶¶ 160–61.  Allen also appealed the proposed revocation of his license to the Board.  *MTD Op.*, 2023 U.S. Dist. LEXIS 60950, at *7.  The Board affirmed the revocation.  *Id.* at *12.

Allen did not seek a judicial determination of whether his license was rationally revoked, whether evidence supported the revocation, or whether he met the suitability standard.  Instead, in September 2020, he sued the District, MPD, the Board, and several individual Defendants in this Court.  *Id.* at *12–13.  Those individual Defendants included then-Chief of MPD Peter Newsham, the Board members who had heard Allen's appeal, and then-Lieutenant Colin Hall, who had reviewed Allen's application.  Compl. ¶¶ 21–22, 27.  Allen alleged eight claims.  *MTD Op.*, 2023 U.S. Dist. LEXIS 60950, at *12–13.  Defendants moved to dismiss the Complaint for failure to state a claim.  *Id.* at *2.

The Court dismissed almost all the claims. *Id.* As relevant here, the Court dismissed all claims against the individual Defendants. *Id.* at *27–31. The Court explained that the individual Defendants "are immune from suit in their personal capacities under a theory of qualified immunity" and "not liable in their official capacities" because "[t]he District of Columbia is named as a Defendant in this action, making it redundant to name the individual Defendants in their official capacities." *Id.* at *31. The Court also dismissed all claims arising from the proposed revocation of Allen's registration "[b]ecause MPD fully reinstated the firearm registration certification." *Id.* at *14.

The Court then analyzed the remaining claims on the merits and concluded that they all failed with one exception: The Court found that the Complaint plausibly alleged that the District's alleged interpretation and application of the suitability standard to Allen violated the Second Amendment. *Id.* at *27. The Court explained that the Supreme Court had recently announced a new test for Second Amendment challenges in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). *Id.* at *20. But there were few cases then applying *Bruen*'s new framework, so the Court relied on a Fifth Circuit opinion, *United States v. Rahimi*, 61 F.4th 443 (5th Cir.), *rev'd*, 144 S. Ct. 1889 (2024), which suggested that the government can only regulate gun possession by individuals with criminal convictions. *Id.* at *23. Based on *Rahimi*, the Court allowed Allen's Second Amendment claims for injunctive, declaratory, and monetary relief against the District stemming from the license revocation to go forward. *Id.* at *27; Order [30] at 1.

The Parties entered discovery. But a few months into discovery, the Supreme Court granted certiorari in *Rahimi*. *Allen v. District of Columbia* (*Stay Op.*), No. 20-cv-2453, 2024 WL 379811, at *1–2 (D.D.C. Feb. 1, 2024). Because this Court had earlier observed that "*Rahimi* is

4

analogous to this case," *MTD Op.*, 2023 U.S. Dist. LEXIS 60950, at *23, the District moved to stay this case pending *Rahimi*, *Stay Op.*, 2024 WL 379811, at *1. Allen opposed, but the Court agreed with the District and stayed the case. *Id.*

Despite the stay, Allen filed the instant motion. Mem. of P. & A. in Supp. of Pl.'s Mot. for Relief Under R. 54(b) or R. 60(b)(1) (Pl.'s Mot.) [58]. He moves to reconsider the dismissal of (1) the claims against the individual Defendants for injunctive relief in their personal capacities, and (2) the Second Amendment claim for damages arising from the proposed revocation of his firearm registration certificate. *Id.* at 2. Allen expressed that he was unsure whether his motion should be brought under Rule 54(b), which applies to interlocutory orders, or Rule 60(b)(1), which applies to final judgments. *Id.* at 3 n.1. And he explained that he was filing the motion despite the stay because Rule 60(b)(1) requires motions "be filed 'within a reasonable time' that is 'no more than a year after the entry of the judgment.'" *Id.* (quoting Fed. R. Civ. P. 60(b)(1)). To Allen, his motion was timely because he filed it just two weeks before the one-year deadline. *Id.*

The District filed a short response noting that, unlike Allen, the District would not violate the Court's stay order by briefing his motion during a stay. Def.'s Resp. [59] at 1. The District also explained that Allen was incorrect in thinking that Rule 60(b)(1) applied to his motion. *Id.* at 2–3. An order dismissing some but not all claims is interlocutory, and thus Rule 54(b) applies. *Id.*; *see also, e.g.*, *McCrea v. District of Columbia*, No. 16-cv-808, 2023 WL 3995638, at *2 (D.D.C. June 14, 2023) (Chutkan, J.). Allen did not note any objection to the District's response.

Later, the Supreme Court issued its decision in *Rahimi*. The Court reversed the Fifth Circuit and held that the government has long been allowed to—at least—"disarm individuals who present a credible threat to the physical safety of others." 144 S. Ct. at 1902. The Court

5

thus upheld a federal law that disarmed individuals regardless of whether they had past convictions. *Id.* at 1896 (citing 18 U.S.C. § 922(g)(8)(B)(i)). The Parties then proposed a schedule for the remainder of this case, including briefing on Allen's motion for reconsideration, which the Court entered. Am. Sched. Order [61].

## LEGAL STANDARD

"A court may revise or reconsider any non-final order 'at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.'" *Hall & Assocs. v. EPA*, 210 F. Supp. 3d 13, 18 (D.D.C. 2016) (Chutkan, J.) (quoting Fed. R. Civ. P. 54(b)), *aff'd*, No. 16-5315, 2018 WL 1896493 (D.C. Cir. Apr. 9, 2018). Nonetheless, "to promote finality and protect the court's judicial resources, the court is loath to revisit its prior decision absent 'extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice.'" *Id.* (quoting *Shea v. Clinton*, 850 F. Supp. 2d 153, 157–58 (D.D.C. 2012)). That is, the movant cannot simply show clear error. Rather, "[t]he movant must demonstrate that some harm, legal or at least tangible, would flow from a denial of reconsideration." *United States ex rel. Staggers v. Medtronic, Inc.*, No. 15-cv-392, 2019 WL 13132850, at *1 (D.D.C. Nov. 13, 2019) (Chutkan, J.) (internal quotation marks and citation omitted).

## ARGUMENT

**I.     The Court Correctly Dismissed the Claims for Injunctive Relief Against the Individual Defendants in Their Personal Capacities.**

Allen cannot pursue Second Amendment claims for injunctive relief against individual Defendants in their personal capacities. So such claims were correctly dismissed, and reconsideration is unwarranted. As this Court and others recognize, injunctive relief for constitutional claims is not available against individual government defendants sued in their

6

personal capacities. *Jones v. U.S. Secret Serv.*, 701 F. Supp. 3d 4, 14 n.2 (D.D.C. 2023) (Chutkan, J.), *appeal docketed*, No. 23-5288 (D.C. Cir. Dec. 7, 2023); *see also, e.g.*, *Corsi v. Mueller*, 422 F. Supp. 3d 51, 68 (D.D.C. 2019), *aff'd*, 819 F. App'x 6 (D.C. Cir. 2020); *BEG Invs., LLC v. Alberti*, 34 F. Supp. 3d 68, 80 (D.D.C. 2014). That is because a personal-capacity suit is against the individual defendant him/herself, not against him/her as an officeholder and not against the government for whom he/she works. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). As such, any relief (like an injunction) would attach to the defendant "personally." *Hatfill v. Gonzales*, 519 F. Supp. 2d 13, 26 (D.D.C. 2007) (internal quotation marks omitted) (quoting *Ameritech Corp. v. McCann*, 297 F.3d 582, 586 (7th Cir. 2002)). But in this case, "[t]he policy [Allen] challenges . . . is that of" *the District* "and [was] carried out by the defendants in their capacities as [District] employees, *i.e.*, in their official capacities." *Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989). Accordingly, injunctive "relief for *constitutional* violations," like the one Allen presses in this case, "'can only be provided by the government through government employees acting in their official capacities because deprivation of a constitutional right can only be remedied by the government.'" *Jones*, 701 F. Supp. 3d at 14 n.2 (quoting *Hatfill*, 519 F. Supp. 2d at 26).

Thus, contrary to Allen's charges of error, the Court's dismissal of the individual Defendants was correct. Qualified immunity barred the claims against them in their personal capacities for damages. *MTD Op.*, 2023 U.S. Dist. LEXIS 60950, at *31. The Court understandably did not more specifically address personal-capacity claims for injunctive relief because Allen did not specify that he was seeking injunctive relief against the individual Defendants in their *personal* capacities. *See* Pl.'s Opp'n to Defs.' Mot. to Dismiss (Pl.'s Opp'n) [24] at 38. Instead, his Complaint alleged that he sued the individual Defendants "in their

7

personal capacities because their conduct . . . *violated*" his rights. Compl. ¶¶ 25, 29 (emphasis added). He was thus suing them in their personal capacities for a past harm ("violat*ed*"), not to prevent a future harm, which is the focus of injunctive relief. The Court also understandably did not more specifically address personal-capacity claims for injunctive relief because there is no such thing in this context. *See Jones*, 701 F. Supp. 3d at 14 n.2; *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." (citing *Hafer v. Melo,* 502 U.S. 21, 30, 27 (1991))). Instead, injunctive claims against individual defendants must be pursued through official-capacity suits. *Id.* But official-capacity suits are in effect suits against the District, so they are superfluous and rightly dismissed when the District is already named, as here. *MTD Op.*, 2023 U.S. Dist. LEXIS 60950, at *31; *see also, e.g.*, *Johnson v. Fenty*, No. 10-5105, 2010 WL 4340344, at *1 (D.C. Cir. Oct. 1, 2010); *Lopez v. District of Columbia*, 268 F. Supp. 3d 256, 259 (D.D.C. 2017).

Altogether then, the Court's order dismissing the individual Defendants is perfectly consistent with the law. Allen, however, overlooks all the above case law and appears confused. He spends all his time arguing that qualified immunity cannot bar claims for injunctive relief. But that does not address the issue presented by Allen's motion: whether he "may pursue his Second Amendment claims for injunctive relief against the Individual Defendants in their *personal capacities*." *Id.* at 8 (emphasis added). The case law cited by the District, including an opinion by this Court, addresses that issue and holds that the personal-capacity suits Allen wants to pursue are not cognizable.[3] Put another way, qualified immunity is irrelevant when it comes

---

[3] In response, Allen may try to find some decision that goes against this consensus. It would be wrong. In any event, Allen needs to show *clear* error. *Hall*, 210 F. Supp. 3d at 18.

to personal-capacity suits for injunctive relief because § 1983 does not permit such suits at all. *Greenawalt v. Ind. Dep't of Corr.*, 397 F.3d 587, 589 (7th Cir. 2005). To the extent Allen quibbles with the Court's explanation in its opinion, Pl.'s Mot. at 3, Rule 54(b) applies to "orders." So what matters is whether the Court's *order* was correct, and as explained above, it was. *See Greenawalt*, 397 F.3d at 589 (explaining that, although the district court erred in dismissing a personal-capacity injunctive-relief claim based on qualified immunity, "the error is of no consequence because section 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity").

Not only does Allen fail to identify a clear error, but he also fails to identify harm that would occur if he could not seek injunctive relief against the individual Defendants in their personal capacities. *See Staggers*, 2019 WL 13132850, at *1. At most, he says he wants to "to prevent the Individual Defendants from continuing to violate his Second Amendment rights." Pl.'s Mot. at 6. But allowing Allen to pursue injunctive relief against the individual Defendants in their personal capacities would do nothing for Allen. This is so for several reasons.

To start, for reasons this Court has already explained, these individuals cannot provide any prospective relief for Allen's alleged constitutional violations in their personal capacities. *Jones*, 701 F. Supp. 3d at 14 n.2. What is more, most of the individual Defendants are not even District officials anymore. *See Cnty. Bd. of Arlington v. U.S. Dep't of Transp.*, 705 F. Supp. 2d 25, 29 (D.D.C. 2010) (dismissing injunctive relief claims against individual in his personal capacity who no longer worked for the state). Peter Newsham retired from his role as Chief of

---

The abundance of authority cited above shows that, at most, this is an issue with authority on both sides. Any error, then, in choosing one side cannot be "clear." *See United States v. Gamble*, No. 19-cv-348, 2020 WL 5062938, at *3 (D.D.C. Aug. 27, 2020) (denying reconsideration of dismissal order when movant pointed to a circuit split and non-binding cases).

MPD.  MPD, *Police Chiefs – Past and Present*, https://mpdc.dc.gov/node/226482 (last visited Aug. 14, 2024).  The Board panelists do not currently serve on the Board—because it no longer exists.  *See* note 2, *supra*.  Although the last individual Defendant, then-Lieutenant (now-Commander) Hall, still serves in MPD, he has not served in the Firearms Registration Branch for years.  MPD, *First District Commander*, https://mpdc.dc.gov/node/209112 (last visited Aug. 14, 2024).  So injunctive relief against him would be meaningless because he has no role in registration and licensing policy.

Accordingly, the individual Defendants are not "continuing to violate [Allen's] Second Amendment rights."  Pl.'s Mot. at 6.  Indeed, it is not clear what "continuing violation" Allen is referring to.  He does not allege that any individual Defendant has taken any action towards him since the Board affirmed his revocation.  Nor can Allen contend that the District or any individual Defendant continues to deprive him of a license because nothing bars Allen from reapplying for a license.

Moreover, Allen does not need to sue the individual Defendants personally because he is already pursuing prospective relief that would remedy his constitutional claims.  In the main, he seeks to enjoin an alleged District policy.  *E.g.*, Compl. ¶¶ 16, 273, 318(a), (e).  Should he prevail, an injunction and declaratory judgment against the District—which is still a defendant— will remedy his injuries.  *See Kentucky*, 473 U.S. at 165–66; *Jones*, 701 F. Supp. 3d at 14 n.2.  This is a case "against the government," so having the District has a defendant suffices.  *Cayuga Nation v. Zinke*, 302 F. Supp. 3d 352, 359 (D.D.C. 2018).  Allen nonetheless suggests that keeping injunctive relief available against the individual Defendants in their personal capacities is necessary because he seeks an order enjoining enforcement of his revocation and an order directing reinstatement of his license.  Pl.'s Mot. at 5 (citing Compl. ¶ 318(b), (c)).  But

reinstating a license or refraining from enforcing a license revocation "are actions that only the official Defendants in their official capacities can take or refrain from taking." *Cayuga Nation*, 302 F. Supp. 3d at 359.[4]

Allen is similarly mistaken in suggesting that he needs to pursue injunctive relief against the individual Defendants in their personal capacities so he can get around *Monell*.  Pl.'s Mot. at 6.  His Second Amendment claim is clear that he is only challenging a District "policy." Compl. ¶ 273.  He cannot change his claim now and say he wants to challenge something other than a District policy.  *Cf. Stay Op.*, 2024 WL 379811, at *4 (rejecting attempt by Allen to revise his Second Amendment claim).

In contrast to Allen, reinstating the personal-capacity claims would impose a substantial hardship on the individual Defendants.  Allen would suddenly cast a pall of potential liability over them, even though they could provide no relief to him.  These individuals have moved on in their careers—and in some instances, moved outside the District.  It is unfair, to put it mildly, and wrong as a matter of law, to allow Allen to go after them *personally* for *official* acts that occurred five years ago.

---

[4] In any event, this relief is not available anymore from any defendant because it would conflict with District law. *Goodluck v. Biden*, 104 F.4th 920, 924 (D.C. Cir. 2024). For example, a District statute—unchallenged here—provides that a concealed carry license is only valid for two years. D.C. Code § 7-2509.03(a). Had Allen's license not been revoked, it would have expired by now. So, if the Court finds that MPD's revocation did not comport with the Second Amendment, the Court cannot order the District to reinstate Allen's license because it has already expired.

## II. The Court Correctly Dismissed a Second Amendment Claim Regarding Allen's Firearm Registration Certificate.

Allen cannot pursue a Second Amendment claim for damages based on the proposed revocation of his firearm registration certificate. So that claim was correctly dismissed, and reconsideration is unwarranted. This is so for three reasons.

First, at the motion-to-dismiss stage, Allen never raised any argument that he should be allowed to pursue damages for the alleged revocation of his registration certificate, despite its reinstatement. Yet, a motion for reconsideration may be denied purely because the movant failed to raise the argument earlier. *Pintro v. Wheeler*, No. 13-cv-231, 2015 WL 13925104, at *3 (D.D.C. July 31, 2015); *see District of Columbia v. Doe*, 611 F.3d 888, 896 (D.C. Cir. 2010). Here, in the very first pages of the District's motion to dismiss, the District explained that Allen's Second Amendment claim failed because, among other reasons, he "still possesses a valid firearm registration certificate and has the right to keep a firearm in his home." Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss [22-1] at 3. Accordingly, when turning to the claim in detail, the District focused on whether revoking Allen's *license* violated the Second Amendment. *Id.* at 28–34. In response, Allen did not raise any argument that a damages claim arising from the alleged registration revocation should proceed. *See* Pl.'s Opp'n. Nor did he raise any of the mootness principles he relies on now. *See* Pl.'s Mot. at 7–8. Still further, he argued that he stated a Second Amendment claim because Defendants "violated [his] Second Amendment rights when they revoked his *CPL*." Pl.'s Opp'n at 18 (emphasis added). Thus, he cannot now claim that he wants to pursue a different claim that the District violated his Second Amendment rights when it revoked his *registration certificate*.

Second, Allen's registration certificate was never in fact revoked, and his right to possess a firearm was never infringed. District law provides that a registration revocation does not take

12

effect until the time for an appeal of MPD's decision to the D.C. Court of Appeals expires or, if an appeal is taken, the Court of Appeals' judgment becomes effective. D.C. Code § 7-2502.10(b). Put simply, a revocation does not take effect if there is an appeal. *See id.* All this was explained in the notice sent to Allen at the time. Reg. Not. at 1–2. Allen accordingly appealed the "*proposed* revocation"—as his own Complaint calls it—and he succeeded in getting his registration certificate reinstated. Compl. ¶¶ 147, 150 (emphasis added).

As a matter of law, then, Allen's registration never took effect. And as a matter of fact, Allen never alleges that he ever got rid of his firearm due to the proposed revocation. *See* D.C. Code § 7-2502.10(c) (providing that "[w]ithin 7 days of a decision unfavorable to the applicant or registrant becoming final, the applicant or registrant shall" return, remove, or dispose of his firearm). Whether he in fact dispossessed himself of a gun as a result of actions by the District is what matters most. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) ("[U]nder Article III, an injury in law is not an injury in fact."). So, both as a matter of law and fact, Allen was never deprived of his right to possess a firearm. That means that Allen cannot seek "damages based on D.C.'s revocation of his firearm registration." Pl.'s Mot. at 8.

Third, even if there had been an effective revocation, that revocation was neither based on the policy Allen challenges nor a Second Amendment violation. Put differently, there is a mismatch between revocation of Allen's registration certificate and Allen's Second Amendment claim. It is undisputed that MPD *mistakenly* proposed to revoke Allen's registration. Compl. ¶¶ 160–61; *MTD Op.*, 2023 U.S. Dist. LEXIS 60950, at *9. MPD did not intend to revoke Allen's registration based on the suitability regulation or any revised interpretation of that standard. Reg. Ltr. at 1. The original notice did not mention the suitability standard in the first place. Reg. Not. at 1. Nor could MPD have revoked a registration certificate under the

13

suitability standard because that standard applies to "license[s]." 24 DCMR § 2335(d); *see also* D.C. Code § 22-4506(a). Suitability is just not a qualification for registration. *See* D.C. Code § 7-2502.03.

Yet, Allen's Complaint only challenges the suitability standard and MPD's alleged reinterpretation of it. To illustrate, he alleges that the alleged "policy" he challenges applies to applications for "a concealed pistol license." Compl. ¶ 1. Likewise, his Second Amendment count focuses on attacking MPD's application of the suitability standard ("propensity for violence or instability"). *E.g.*, *id.* ¶ 267. In accord, that count alleges that the Second Amendment violation at issue here is that Allen was "deprived" of his "right to possess a firearm outside his home." *Id.* ¶ 271. A license allows an individual to carry a gun outside the home, while a registration certificate allows an individual to possess a gun in the home. Background § I, *supra*. Also in accord, his requested relief is focused on the suitability standard and the revocation of his license. The only policy he asks this Court to enjoin is an alleged "policy" for applying the "propensity for violence" (*i.e.*, suitability) standard. Compl. ¶ 318(a). Given all this, the Court held that the only claim Allen could pursue was a Second Amendment claim challenging "MPD's revised interpretation of 'propensity for violence or instability,'" *MTD Op.*, 2023 U.S. Dist. LEXIS 60950, *34, and the Chief's decision to revoke Allen's "CPL" based on a "change in the Chief of Police's position on what it means to have exhibited propensity for violence or instability . . . under 24 DCMR § 2335.1(d)," *id.* at *36 (internal quotation marks and citation omitted).

Accordingly, Allen's Second Amendment claim is not a vehicle to seek damages for revocation of his registration certificate (assuming a revocation took effect). A plaintiff must show that the policy he challenges caused his injury. *California v. Texas*, 593 U.S. 659, 669–70

14

(2021); *see Flannery v. D.C. Dep't of Health*, No. 22-cv-3108, 2023 WL 8716812, at *7 (D.D.C. Dec. 18, 2023) (dismissing claim when the administrative record did not reflect that the challenged policy was applied to plaintiff), *appeal docketed*, No. 24-7005 (D.C. Cir. Jan. 18, 2024). Here, the policy that Allen challenges did not cause his revocation, nor could MPD have applied the suitability standard to revoke a registration certificate. Reg. Not. at 1; Reg. Ltr. at 1. What caused Allen's revocation was, unfortunately, a mistake. Reg. Ltr. at 1; Compl. ¶¶ 160–61. Allen, however, does not allege that an administrative mistake rises to a Second Amendment violation. Nor has he pointed to any precedent recognizing such a claim. To the contrary, mistakes sometimes happen when administering a complex registration and licensing system. But they are not the proper subject of a Second Amendment challenge—especially not one laser-focused on a standard that only applies to licensure.

Allen does not address any of the above. Instead, invoking general mootness principles, he argues that a damages claim arising from the alleged revocation of his registration certificate was not mooted by reinstatement of his certificate. Pl.'s Mot. at 7. He misses the point. As explained, his registration was never revoked. Even it was revoked, that revocation was not based on the policy that he challenges or the Second Amendment violation that he alleges. So there was never a live controversy regarding whether the District "revoked" Allen's registration certificate based on the policy that Allen challenges. *See Creamer v. District of Columbia*, No. 22-cv-1874, 2023 WL 4027513, at *1 (D.D.C. June 15, 2023) (no live controversy when licenses were never in fact revoked under the policy challenged by plaintiffs). Although damages are available for a past constitutional injury, and a damages claim may keep an otherwise moot case alive, *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 797 (2021), there was no past constitutional injury here arising from the proposed revocation of Allen's registration certificate.

15

To be clear, the issue is more one of standing, not mootness, because MPD retracted its proposed revocation *before* Allen filed his Complaint. Compl. ¶¶ 160–61; *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). But the above analysis comes out the same even if analyzed under mootness. *See Lewis v. Becerra*, --- F.4th ----, ----, No. 23-5152, 2024 WL 3627936, at *2 n.1 (D.C. Cir. Aug. 2, 2024). That is, were Allen to prevail on his claim that MPD's alleged interpretation of the suitability standard violated the Second Amendment, that decision would not call into question MPD's proposed revocation of his registration certificate because that proposed revocation was a mistake and not based on the suitability standard. *Cf. DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (case was moot when, no matter "the ultimate resolution of the issues in this case," the plaintiff's registration status would be unaffected).

Allen, then, is unable to show clear error, but he is also unable to show harm if the Court declines to let him belatedly pursue damages regarding his registration certificate. *See Staggers*, 2019 WL 13132850, at *1. Allen complains that dismissal of claims regarding his registration certificate prevents him from seeking the damages he requested in his Complaint. Pl.'s Mot. at 7. Not so. The District asked Allen to identify the damages he seeks in his Complaint, and the only damages he identified relate to revocation of his *license* and his inability to carry a gun outside the home. Def.'s Ex. C, Pl.'s Resps. & Objs. to Def.'s 1st Set of Interrogs. at 4–6. Thus, Allen has not identified any damages he suffered from the proposed revocation of his registration certificate, so declining reconsideration will not prevent him from seeking any compensatory damages. As to nominal damages, Allen is already seeking them, and he does not explain how a difference between $1 and $2 justifies his late and misguided request for reconsideration.

Unlike Allen, the District faces hardship were Allen allowed to add claims regarding his registration certificate. Namely, discovery would expand, and the Parties would be forced to redo already completed discovery. Despite the relatively narrow issues in this case, Allen has sought remarkably broad discovery (56 requests for production, for example). To keep discovery manageable and consistent with the Rules, the District has objected to any requests related to Allen's registration certificate or policies regarding registration. Relatedly, in performing historical research and working with expert historians, the District has focused on the history of *carrying* regulations because this case only challenges a regulation that applies to concealed carry licenses.

But were the Court to allow Allen to pursue claims regarding registration midway through discovery, the scope of discovery would expand. The District would need to redo its investigation, searches, productions, and responses to Allen's requests. The District would also need to undertake new historical research and consider finding additional experts. Further, if the Court grants reconsideration after the Parties have taken depositions, then depositions may need to be retaken. That would cost taxpayer dollars (deposition expenses, like court reporter fees, are paid out of the District's budget) and the time of counsel and witnesses, most of whom are public servants or law enforcement. Such a costly, inefficient, and unfair result is the opposite of what "justice so requires." *Hall*, 210 F. Supp. 3d at 18 (internal quotation marks and citation omitted).

## CONCLUSION

For the foregoing reasons, the Court should deny Allen's motion for relief under Rule 54(b) or 60(b)(1).

Date: August 16, 2024.　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　　BRIAN L. SCHWALB
　　　　　　　　　　　　　　　　　　　　　　　　Attorney General for the District of Columbia

17

STEPHANIE E. LITOS
Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Chief, Civil Litigation Division, Equity Section

*/s/ Honey Morton*
HONEY MORTON [1019878]
Assistant Chief, Equity Section

*/s/ Adam J. Tuetken*
ADAM J. TUETKEN [242215]
RICHARD P. SOBIECKI [500163]
Assistant Attorneys General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
Phone: (202) 735-7474
Email: adam.tuetken@dc.gov

*Counsel for Defendant*
